# THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 33

APRIL TERM, A.D. 2023

April 20, 2023

HOPEFUL, a Wyoming partnership
consisting of Edward F. Murray, Jr.,
Donald F. Murray, William M. Murray,
Mary Ann Kulas f/k/a Mary Ann Hollis, and
Ted Simola; HOPEFUL LTD., a Wyoming
partnership consisting of Edward F. Murray,
Jr., Donald F. Murray, William M. Murray,
Mary Ann Hollis, and Ted Simola; and
TED SIMOLA, an individual,

Petitioners,

v.

S-22-0171

ETCHEPARE, L.L.C., a Wyoming limited
liability company; NED MURRAY CO.,
a Wyoming partnership;
GBK INVESTMENTS, L.L.C., an
Oklahoma limited liability company; and
EOG RESOURCES, INC., a Delaware
corporation,

Respondents.

*Original Proceeding*
*Petition for Writ of Review*
*District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

*Representing Petitioners:*
    Bernard Q. Phelan, The Phelan Law Firm, Cheyenne, Wyoming.  Argument by Mr. Phelan.

*Representing Etchepare, L.L.C. and Ned Murray Co.:*
    Jason D. Wasserburger and Rio D. Smith, WSH Law, P.C., Cheyenne, Wyoming. Argument by Mr. Wasserburger.

*Representing GBK Investments, L.L.C.:*
    Amanda K. Roberts and J. Kyle Hendrickson, Lonabaugh and Riggs, LLP, Sheridan, Wyoming.

*Representing EOG Resources, Inc.:*
    Lori A. McMullen, Lindsay A. Woznick, and Amanda M. Good, Crowley Fleck PLLP, Cheyenne, Wyoming.  Argument by Ms. Good.

*Before FOX, C.J., and KAUTZ, GRAY, and FENN, JJ., and PEASLEY, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   Hopeful partnership, Hopeful Ltd. (together, Hopeful entities), and Ted Simola, an individual, (Petitioners) filed a Petition for Writ of Review with this Court seeking interlocutory review of the district court's orders denying their motion to dismiss and motion to set aside default.  Petitioners claim the district court lacked subject matter jurisdiction and personal jurisdiction in the underlying declaratory judgment action because all parties were served by publication and no summons were issued.  We find the district court had subject matter jurisdiction.  The district court erred, however, in finding the service by publication conferred personal jurisdiction over the defendants with a known address.  While the Hopeful entities waived their objections to personal jurisdiction by voluntarily submitting to the jurisdiction of the district court, the district court abused its discretion in denying their motion to set aside the default judgment.  Affirmed in part and reversed in part.

## *ISSUES*

[¶2]   We phrase the issues as:

1.   Does the failure to issue a summons to parties served by publication deprive the district court of subject matter jurisdiction and/or personal jurisdiction?

2.   Did service by publication on parties with a known address in Wyoming confer personal jurisdiction?

3.   Did Hopeful partnership, Hopeful Ltd., and Ted Simola waive personal service?

4.   Did the district court err in entering a default judgment and denying the motion to set aside default?

## *FACTS*

[¶3]   On March 26, 2021, Etchepare, a Wyoming limited liability company, filed a Petition for Quiet Title and Declaratory Judgment naming Hopeful partnership and Hopeful Ltd., two Wyoming entities, and fourteen other entities, individuals and unknown claimants as defendants.  The partners in both Hopeful entities consisted of the same individuals, Edward F. Murray, Jr., Donald F. Murray, William M. Murray, Mary Ann Kulas (nee

1

Hollis),[1] and Ted Simola.[2]  The petition sought to establish ownership of mineral interests located in Laramie County, Wyoming.

[¶4]    In conjunction with the filing of its petition, Etchepare filed an Affidavit for Service by Publication.  The affidavit stated that the address of one defendant, a Pennsylvania entity, could not be ascertained after a reasonable and diligent search and that there were unknown putative defendants with claims against the identified mineral interests.  The affidavit declared, "All other defendants have addresses which are known or through reasonable diligence were ascertained."  The affidavit did not contain the known addresses of the defendants but asserted that "after the first publication" "the notice of publication . . . will be mailed to each defendant whose address is known by certified mail."  On March 31, Notice of Complaint and Service by Publication, signed by the district court clerk, was sent by certified mail to all defendants with a known address.  Etchepare filed Proof of Service and Proof of Publication on May 6, 2021.  Service by publication was completed on May 21, 2021, which was the last date of publication.  No defendant was personally served and no summons were issued.

[¶5]    Etchepare filed two Applications for Entry of Default, one on May 24, 2021, and the other on May 26, 2021.  Together, these applications requested an entry of default against ten defendants but did not request entry of default against the Hopeful entities or Ted Simola.  Each application was granted by the district court on the same day it was filed.  On June 8, 2021, Ned Murray Co. and Etchepare filed a Joint Motion and Stipulation to Realign Parties asking that Ned Murray Co. be removed as a Defendant and named as a Plaintiff on the grounds that Ned Murray Co. agreed with Etchepare's claims regarding the current mineral interests.  The same day, Ned Murray Co. and Etchepare filed a Motion to Bifurcate the claims against the Hopeful entities from the other defendants stating:

> Etchepare and Ned Murray Co. are in agreement with the allegations Etchepare made in its [petition] regarding the mineral interests owned by Hopeful and Hopeful Ltd. . . . . Issues have arisen regarding the distribution of the mineral interests of Hopeful and Hopeful Ltd. between the current partners Ned Murray Co.,[3] Ted Simola, and Mary Ann Kulas . . . . These issues do not concern Etchepare nor involve the mineral interests to which Etchepare seeks to quiet title to and obtain a declaratory judgment . . . . Defendant Ted Simola has

---

[1] Mary Ann Kulas was known as Mary Ann Hollis at the inception of the partnerships.

[2] William M. Murray died on March 23, 1990.  Edward F. Murray, Jr., died on March 7, 2000.  Donald F. Murray died on May 29, 2002.  Ms. Kulas and Mr. Simola are the surviving original partners of the Hopeful defendants.

[3] Ned Murray Co. was not named as a partner in the Hopeful entities in the Complaint or in the Motion to Bifurcate.  During the proceedings, an issue arose regarding the status of Ned Murray Co. in relation to the interests of Edward F. Murray, Jr.

raised concerns regarding ownership of the partnership interests, distribution of the mineral interests to the current partners, payment of proceeds of production, and several other issues that remain unresolved.

Etchepare and Ned Murray Co. requested the bifurcation so that claims against the other parties might proceed while the Hopeful entities addressed their unique claims in a separate proceeding.

[¶6] On June 14, 2021, Mary Ann Kulas and Ted Simola filed a joint Answer of Defendants in their individual capacities.[4] They affirmatively asserted the Hopeful entities dissolved as a matter of law in March 1990 upon the death of William M. Murray and that Ms. Kulas and Mr. Simola now held the mineral interests, together with certain other parties, as tenants in common.

[¶7] The district court granted the motion to realign the parties on July 2, 2021, and on August 23, 2021, issued its order granting the bifurcation of the proceedings.[5] On September 16, 2021, the district court entered an order granting a Partial Decree for Quiet Title and Declaratory Judgment. The order determined the interests of all defendants, including the Hopeful partnership, Hopeful Ltd., and Mr. Simola, subject to the issues addressed in the Order to Bifurcate.

[¶8] The next relevant procedural event occurred on January 5, 2022, when the Hopeful entities, Ms. Kulas, and Mr. Simola filed a Motion to Amend Answer Clarifying the Status of the Partnerships; Asserting Counterclaims for Quiet Title, and Conversion of Funds and Cross Claims for Quiet Title and Trespass and Third Party Action for Conversion (Motion to Amend). Ned Murray Co. filed an objection to the Hopeful entities' Motion to Amend asserting the Hopeful entities had not answered the Petition or entered an appearance.

[¶9] A hearing was set for March 23, 2022. On the morning of the hearing, Etchepare and Ned Murray Co. filed an Application for Entry of Default against the Hopeful entities for failure to timely answer the petition. The court orally denied the Hopeful entities' Motion to Amend finding they had never filed an answer, no attorney had previously entered an appearance on behalf of Hopeful partnership or Hopeful Ltd and as a result, there was no answer to amend. The district court entered default against the Hopeful entities following the hearing.

---

[4] While Mr. Simola was named as an individual defendant based on his separate interest in some of the mineral leases, Ms. Kulas was sued only in her capacity as a partner in the Hopeful entities. Her response as an individual went unchallenged until recently. The parties have not resolved whether she will continue to be an individual party to this suit.

[5] The Order to Bifurcate described Ned Murray Co. as a current partner in the Hopeful partnership and Hopeful Ltd.

[¶10]   Two days later, the Hopeful entities filed an objection to the entry of default.  They claimed they had never been served a summons, were not properly served, and had no obligation to answer.  The Hopeful entities averred that they were amenable to accepting personal service, and if service of process was accomplished, they were ready to proceed with this matter.  In an alternative request for relief, they requested the matter be dismissed for lack of jurisdiction.

[¶11]   Five days after the Hopeful entities' motion to set aside default, the district court issued an Order Granting [Mr.] Simola's and [Ms.] Kulas' Motion to Amend Answer.  This order did not address the motion to set aside default against the Hopeful entities.

[¶12]   On April 13, 2022, the district court entered its written partial order denying the Hopeful entities' motion to amend.  On April 19, 2022, the Hopeful entities renewed their motion to dismiss the case based on jurisdictional defects.

[¶13]   The district court held a hearing on the Hopeful entities' Motion to Set Aside Default on June 1, 2022.  During the Hopeful entities' argument, the district court read the following statement from *JAG v. State*:

> In order for a court to acquire jurisdiction over a defendant, that defendant must be properly served or must "voluntarily" appear.  A judgment entered without the court having jurisdiction is null and void.  A defendant may waive his right to challenge a court's jurisdiction.  Such a challenge should be made at the defendant's soonest opportunity. Failure to timely broach the issue with the court may result in waiver of that defense.  Most importantly for this case, where a defendant appears voluntarily, without questioning the court's personal jurisdiction, that appearance is the equivalent of proper service of process.  We have held that a party will be deemed to have appeared in an action, even though no formal pleadings have been entered, when contacts between the parties clearly demonstrate an intent to defend.

*JAG v. State, Dep't of Fam. Servs., Div. of Pub. Assistance & Soc. Servs.*, 2002 WY 158, ¶ 13, 56 P.3d 1016, 1019 (Wyo. 2002) (citations omitted).  The district court asked why that statement would not apply to the Hopeful entities in this case.  The Hopeful entities' attorney responded, "The keyword is 'service.' . . . [S]ervice is delivering the summons with the complaint together so as to give notice to the defendant of the courts taking jurisdiction having issued a summons.  There must be a summons."

[¶14]   Ned Murray Co. moved to dismiss the motion to set aside default.  In an oral ruling, the district court dismissed the request to set aside default.  It held the Hopeful entities did

4

not present any evidence in relation to the three-factor test to set aside default: "whether the plaintiff [would] be prejudiced, whether the defendant has a meritorious defense, and three, whether there's culpable conduct of the defendant that led to the default." The district court further ruled that service by publication under W.R.C.P. 4(k) does not contain a requirement that a summons be issued before service is valid. After this ruling, Ned Murray Co. requested that the court deny the Hopeful entities' motion to dismiss the complaint for lack of subject matter and personal jurisdiction based on their failure to prove insufficient service of process by clear and convincing evidence.

[¶15] The district court entered two written orders on June 22, 2022, one denying Hopeful entities' motion to set aside default and one denying the motion to dismiss. In the order denying the motion to set aside default, the district court reiterated its oral finding that the Hopeful entities had failed to present sufficient evidence to support their motion under W.R.C.P. 55 (Rule 55). In the order denying the motion to dismiss, the court ruled that Etchepare and Ned Murray Co. complied with all of the rules regarding service by publication, and there is no requirement for a summons when serving a defendant by publication. The district court held the actions of Mr. Simola and Ms. Kulas did not inure a benefit to the Hopeful entities and constitute an answer or appearance on behalf of the Hopeful entities prior to default and Mr. Simola and Ms. Kulas could not and did not represent all of the partnership interest in the Hopeful entities, which are currently in opposition to one another.

[¶16] The Hopeful entities and Mr. Simola filed a Petition for Writ of Review with this Court on July 7, 2022. After reviewing all responsive pleadings, the petition was granted on August 2, 2022. The district court issued an order staying all current pleadings, deadlines to respond to pleadings, and a hearing scheduled for August 26, pending this Court's resolution of the writ of review.

## STANDARD OF REVIEW

[¶17] When a writ of review is granted, the reviewing court "may set forth the particular issue or point of law which will be considered." W.R.A.P. 13.07(a). The reviewing court's review is not limited to only an issue defined by the respondent. Instead the reviewing court may "reverse, vacate, remand or modify the decision for errors appearing on the record." W.R.A.P. 13.08; *Wofford v. City of Laramie*, 2016 WY 59, ¶ 14, 375 P.3d 740, 745 (Wyo. 2016) (quoting *Bd. of Cnty. Comm'rs for Sublette Cnty. v. Exxon Mobil Corp.*, 2002 WY 151, ¶ 21, 55 P.3d 714, 721 (Wyo. 2002)).

[¶18] Jurisdictional questions are reviewed de novo review pursuant to "the inherent power, and the duty, to address jurisdictional defects on appeal . . . ." *Walton v. State ex rel. Wood*, 2002 WY 108, ¶ 6, 50 P.3d 693, 695 (Wyo. 2002) (quoting *Gookin v. State Farm Fire & Cas. Ins. Co.*, 826 P.2d 229, 232 (Wyo. 1992)). "If a lower court acts without jurisdiction, 'this court will notice the defect and have jurisdiction on appeal, not on the

5

merits, but merely for the purpose of correcting the error of the lower court in maintaining the suit.'" *Id.* (quoting *Gookin*, 826 P.2d at 232).

[¶19] "We review the question of whether the district court correctly interpreted the rules of civil procedure *de novo*." *Dishman v. First Interstate Bank*, 2015 WY 154, ¶ 13, 362 P.3d 360, 365 (Wyo. 2015) (citing *Windham v. Windham*, 2015 WY 61, ¶ 12, 348 P.3d 836, 840 (Wyo. 2015) (applying de novo standard of review to Rule 37 interpretation)).

> The words of a court rule, like those of a statute, must be taken and construed in the sense in which they were understood and intended at the time the rule was promulgated. We do not examine the rules in isolation, but instead read them in light of one another and interpret them according to their purpose.

*Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 382 (Minn. 2008) (citations and internal quotation marks omitted).

### *ANALYSIS*

### I. *Does the failure to issue a summons to parties served by publication deprive the district court of subject matter jurisdiction and/or personal jurisdiction?*

[¶20] This appeal raises issues of subject matter jurisdiction and personal jurisdiction based on service by publication. The Hopeful entities claim that the failure to serve the defendants with a summons deprived the district court of both subject matter jurisdiction and personal jurisdiction. With equal vehemence, Ned Murray Co. and Etchepare argue that subject matter jurisdiction vested with the district court upon filing their claim, service of process by publication is proper if there is but one defendant who resides out of state with an unknown address, and service by publication on this premise is sufficient to accomplish personal jurisdiction over all parties. For reasons discussed below, both arguments are flawed.

### A. Subject Matter Jurisdiction

[¶21] The Hopeful entities claim that W.R.C.P. 4 requires a plaintiff to request a summons in every case before subject matter jurisdiction resides with the district court. "Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *MH v. First Jud. Dist. Ct. of Laramie Cnty.*, 2020 WY 72, ¶ 5, 465 P.3d 405, 407 (Wyo. 2020) (quoting *Devon Energy Prod. Co., LP v. Grayson Mill Operating, LLC*, 2020 WY 28, ¶ 11, 458 P.3d 1201, 1205 (Wyo. 2020)). "If a court lacks subject matter jurisdiction, 'action taken by that court, other than dismissing the case, is considered to be null and void.'" *Id.* (quoting *Devon*, ¶ 11, 458 P.3d at 1205). Subject matter jurisdiction cannot be waived. *Pilcher v. Elliott*, 2020 WY 130, ¶ 16, 473

P.3d 1251, 1255 (Wyo. 2020). When "construing the subject matter jurisdiction of district courts, we presume that jurisdiction exists and any intent to limit it must be clearly stated." *MH*, ¶ 5, 465 P.3d at 407 (citing *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 48, 331 P.3d 1174, 1188 (Wyo. 2014)).

[¶22] Wyoming courts derive their subject matter jurisdiction from the Wyoming Constitution art. 5, § 10 which states the district courts have "original jurisdiction of all causes both at law and in equity . . . in which jurisdiction shall not have been by law vested exclusively in some other court[.]" "Our precedent makes clear that Wyoming courts have jurisdiction over mineral disputes between private parties, even where federal leases may be concerned." *BTU W. Res., Inc. v. Berenergy Corp.*, 2019 WY 57, ¶ 13, 442 P.3d 50, 54 (Wyo. 2019) (citations omitted).

[¶23] The Hopeful entities argue that even if the district court had general jurisdiction over the matter, failure of a plaintiff to request a summons invoking the court's authority prevents subject matter jurisdiction over any matter until a summons is issued pursuant to W.R.C.P. 4. They cite to a line of North Carolina cases which hold that a failure to serve a summons negates personal jurisdiction, but a failure to *issue* a summons is a matter of subject matter jurisdiction. *Matter of Mitchell*, 485 S.E.2d 623, 624 (N.C. Ct. App. 1997) ("Where no summons is issued the court acquires jurisdiction over neither the persons nor the subject matter of the action." (citing *Swenson v. All Am. Assur. Co.*, 235 S.E.2d 793 (N.C. Ct. App. 1977))); *Wayne Cnty. ex rel. Williams v. Whitley*, 323 S.E.2d 458, 461 (N.C. Ct. App. 1984) ("Under G.S. 1A–1, Rule 4(a), a summons must be issued within five days of the filing of the complaint. Where a complaint has been filed and a proper summons does not issue within the five days allowed under the rule, the action is deemed never to have commenced.").

[¶24] The North Carolina Supreme Court has since negated the holding in *Mitchell*. In *In re K.J.L.*, the court held that the failure to legally issue a summons does not implicate the court's jurisdiction over the subject matter of an action. *In re K.J.L.*, 677 S.E.2d 835, 837–38 (N.C. 2009). "The allegations of a complaint determine a court's jurisdiction over the subject matter of the action," and "the summons affects jurisdiction over the person rather than the subject matter." *Id.* at 837.

[¶25] Wyoming law is similar. "[S]ubject matter jurisdiction is invoked with the filing of a complaint stating a case belonging to a general class over which the authority of the court extends." *Brown v. City of Casper*, 2011 WY 35, ¶ 44, 248 P.3d 1136, 1146 (Wyo. 2011) (citing *State v. Kusel*, 29 Wyo. 287, 297, 213 P. 367, 369 (1923)). "[A] court does not lose subject matter jurisdiction over an action for failure to comply with statutory procedural requirements unless the statute contains an 'unequivocal expression' that failure to comply shall result in a loss of jurisdiction." *Linch v. Linch*, 2015 WY 141, ¶ 32, 361 P.3d 308, 316 (Wyo. 2015) (citations omitted); *Fleet v. Guyette*, 2020 WY 78, ¶¶ 17–18, 466 P.3d 812, 818–19 (Wyo. 2020).

7

[¶26] Rule 4 contains no "unequivocal expression" that the failure to issue a summons causes a loss of subject matter jurisdiction. Indeed, we have held that "[a] summons is 'the means of compelling a defendant to subject *his person* to the jurisdiction of the court from which the summons issues.'" *Hoke v. Motel 6 Jackson*, 2006 WY 38, ¶ 7, 131 P.3d 369, 374 (Wyo. 2006) (emphasis added) (quoting *Pease Bros. v. Am. Pipe & Supply Co.*, 522 P.2d 996, 1001 (Wyo. 1974)).

[¶27] The district court acquired subject matter jurisdiction on the filing of Etchepare's complaint. W.R.C.P. 3 ("A civil action is commenced by filing a complaint with the court[.]").

## II. Did service by publication on parties with a known address in Wyoming confer personal jurisdiction?

## A. Personal Jurisdiction

[¶28] "[W]hile subject matter jurisdiction refers to the power of a court to hear and determine certain classes of cases," "[p]ersonal jurisdiction refers to the power of a court to make an adjudication applicable to a person." *Pilcher*, ¶ 16, 473 P.3d at 1255 (quoting *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 38, 367 P.3d 619, 628 (Wyo. 2016)). Subject matter jurisdiction cannot be waived. Personal jurisdiction, however, can be waived if a party does not object to personal jurisdiction at the earliest opportunity. *Pilcher*, ¶ 16, 473 P.3d at 1255; *Cotton v. Brow*, 903 P.2d 530, 531 (Wyo. 1995).

[¶29] "The proper service of process is necessary to acquire [personal] jurisdiction under the due process provisions of both the federal and Wyoming constitutions. Wyo. Const. art. 1, § 6; U.S. Const. amend. XIV, § 1." *Gookin*, 826 P.2d at 232. "It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." *Id.* (quoting *Kulko v. Superior Ct. of California In & For City & Cnty. of San Francisco*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978)). "While a court may have subject matter jurisdiction, it is clear that without adequate notice to the defendant and opportunity to be heard, jurisdiction does not exist for the proceeding." *Gookin*, 826 P.2d at 233 (citing *Goss v. Goss*, 780 P.2d 306, 310 (Wyo. 1989); 62B Am. Jur. 2d *Process* § 4 (1990)).

[¶30] Courts allow infringement on the fundamental due process rights to notice and an opportunity to be heard only to the extent permitted by legislative or judicially promulgated rules of procedure. *Goss*, 780 P.2d at 310. The general rule requires strict compliance with statutes or rules setting forth the requirements for service of process. *Id.* (citing *Midway Oil Corp. v. Guess*, 714 P.2d 339, 342 (Wyo. 1986)).

8

[¶31]  The Hopeful entities claim the district court did not have jurisdiction because they were never personally served with a summons.  The district court held that, because Etchepare filed an affidavit stating that, after a diligent search, the whereabouts of **one of the defendants could not be found**, and that there were unknown defendants, **all of the defendants could be served by publication**.  It found that Etchepare had complied with the requirements of service by publication, and therefore the court had personal jurisdiction over all the defendants, including the Hopeful entities.  The district court also determined that a summons was not necessary when accomplishing service by publication.

[¶32]  We begin by discussing the propriety of applying service by publication to all defendants if only one named defendant or the presence of unknown defendants falls within the rule's requirements.  We then address whether a summons is required when service of process is accomplished by publication.

### B.     Service of Process

[¶33]  W.R.C.P. 4 (Rule 4) governs the service of process, consistent with specific Wyoming statutory requirements.  Rule 4 divides service of process into two categories: personal service and constructive service.  *In Int. of DG*, 825 P.2d 369, 374–77 (Wyo. 1992).

#### 1.  Personal Service

[¶34]  Personal service is the preferred method to notify a defendant subject to a lawsuit. *First Wyo. Bank, N. A., Rawlins v. Trans Mountain Sales & Leasing, Inc.*, 602 P.2d 1219, 1225 (Wyo. 1979).  Under Rule 4, personal service begins with the issuance of a summons:

> **Rule 4. Summons.**
>
> (a) *Contents.*—A summons must:
>
> > (1) name the court and the parties;
> >
> > (2) be directed to the defendant;
> >
> > (3) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;
> >
> > (4) state the time within which the defendant must appear and defend;

(5) notify the defendant that a failure to appear and defend may result in a default judgment against the defendant for the relief demanded in the complaint;

(6) be signed by the clerk; and

(7) bear the court's seal.

(b) *Issuance.*—On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served.

(c) *By Whom Served.*—Except as otherwise ordered by the court, process may be served:

(1) By any person who is at least 18 years old and not a party to the action;

(2) At the request of the party causing it to be issued, by the sheriff of the county where the service is made or sheriff's designee, or by a United States marshal or marshal's designee;

(3) In the event service is made by a person other than a sheriff or U.S. marshal, the amount of costs assessed therefor, if any, against any adverse party shall be within the discretion of the court.

(d) *Personal Service.*—The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary.

W.R.C.P. 4(a)–(d).

## 2. Service by Publication

[¶35] "The second category of service is generally defined to be constructive service." *DG*, 825 P.2d at 375. "Constructive service differs significantly from personal service made within the jurisdiction and may include service by publication[.]" *Id.* "Publication

10

is an inferior form of service to personal delivery." *First Wyo. Bank*, 602 P.2d at 1225 (citing *In re Lonquest's Est.*, 526 P.2d 994, 998 (Wyo. 1974)). Service by publication must strictly conform to the authorizing statute and Rule 4. *Id.*

[¶36] Rule 4 limits service by publication to specific defendants. Rule 4(k) states:

> (k) *Service by Publication.*—Service by publication may be had where specifically provided for by statute, and in the following cases:
>
>> (1) **When *the defendant* resides out of the state, or the defendant's residence cannot be ascertained**, and the action is:
>>
>>> (A)  For the recovery of real property or of an estate or interest therein;
>>>
>>> (B)  For the partition of real property;
>>>
>>> (C)  For the sale of real property under a mortgage, lien or other encumbrance or charge;
>>>
>>> (D)  To compel specific performance of a contract of sale of real estate;

W.R.C.P. 4(k)(1) (emphasis added). Here, the Hopeful entities usual place of business was Laramie County, and at least one of the original surviving partners resided in Laramie County with a known address.

[¶37] To ensure each defendant is eligible for service by publication, Rule 4(l) requires counsel to file an affidavit explaining why **that** defendant qualifies for service by publication. Rule 4(l) states:

> (l) *Requirements for Service by Publication.*—
>
>> (1) **Affidavit Required.**—Before service by publication can be made, an affidavit of the party, or the party's agent or attorney, must be filed stating:
>>
>>> (A)  that service of a summons cannot be made within this state, on **the defendant** to be served by publication, and

11

(B)   stating **the defendant's** address, if known, or that the defendant's address is unknown and cannot with reasonable diligence be ascertained, and

(C)   detailing the efforts made to obtain an address, and

(D)   that the case is one of those mentioned in subdivision (k), and

(E)   when such affidavit is filed, the party may proceed to make service by publication.

(2) **Publication and Notice to Clerk.**

(A)  Address in publication.—In any case in which service by publication is made when the address of a defendant is known, it must be stated in the publication.

(B)   Notice to and from clerk.—Immediately after the first publication the party making the service shall deliver to the clerk copies of the publication, and the clerk shall mail a copy to each defendant whose name and address is known by registered or certified mail and marked "Restricted Delivery" with return receipt requested, directed to the defendant's address named therein, and make an entry thereof on the appearance docket.

(C)   Affidavit at time of hearing.—In all cases in which a defendant is served by publication of notice and there has been no delivery of the notice mailed to the defendant by the clerk, the party who makes the service, or the party's agent or attorney, at the time of the hearing and prior to entry of judgment, shall make and file an affidavit stating

(i)   the address of such defendant as then known to the affiant, or if unknown,

(ii)   that the affiant has been unable to ascertain the same with the exercise of reasonable diligence, and

> > (iii) detailing the efforts made to obtain an address.
>
> > Such additional notice, if any, shall then be given as may be directed by the court.

W.R.C.P. 4(l) (emphasis added).

[¶38]  In this case, once Etchepare identified one defendant that could not be found and that there were possibly other unknown defendants, it eschewed personal service on all defendants.  As conceded by counsel in oral argument, Etchepare could have personally served the Hopeful entities and the surviving original partners.  Nonetheless, it determined that, due to the large number of defendants in this lawsuit, personal service on each defendant was "impracticable."  The district court validated Etchepare's choice, finding Etchepare had complied with all Rule 4 requirements regarding service by publication resulting in its personal jurisdiction over all defendants.[6]  As discussed below, the assumption that one defendant's due process rights can control the rights of all other defendants is contrary to the specific language in Rule 4.  Etchepare did not comply with the rule's specific requirements to effectuate service.

[¶39]  Etchepare filed its complaint on March 26, 2021.  The same day, without seeking any summons, it filed its Affidavit for Service by Publication.  The affidavit stated in full:

> 1. I am an attorney at law with an office in Cheyenne, Wyoming, am an adult, and have personal knowledge of all matters stated herein.
>
> 2. Service of a Summons on each of the Defendants identified herein cannot be made.
>
> 3. Holmes Jones Petroleum is a purported Pennsylvania entity whose physical address and/or successor-in-interest address cannot be ascertained.
>
> 4. A reasonable diligent search for the address of Holmes Jones Petroleum was conducted in the entity and business records on file with the Wyoming Secretary of State and the Pennsylvania Secretary of State and in addition to a search of the Grantor/Grantee index in the Clerk's Office of Laramie

---

[6] We address only the claims filed by the Hopeful entities, although we note there were numerous defendants served by publication who did not appear before the district court and were defaulted for failing to answer Etchepare's complaint.  *See infra* ¶ 57.

13

County, Wyoming. A general search online also found no results.

5. The other putative claimants against the identified lands, all situate in Laramie County, Wyoming, are unknown.

6. This is a proper case for Service by Publication under W.R.C.P. 4(k)(1)(A), (k)(3)(A)-(C), (k)(4)(A) and (E), and (o) of the Wyoming Rules of Civil Procedure.

7. **All other defendants have addresses which are known or through reasonable diligence were ascertained.**

8. Pursuant to W.R.C.P. 4(l)(2)(B) and after the first publication, I will deliver to the district court clerk a copy of the notice of publication, which will be mailed to each defendant whose address is known by certified mail with return receipt requested directed to the respective defendant's address.

9. Answers from all defendants shall be due within 30 days after the date of last publication pursuant to W.R.C.P. 12(a)(1)(A)(iii).

(Emphasis added.)

[¶40] Etchepare argues its affidavit and all other procedures strictly complied with the rules for service by publication. It maintains that "Because there were unknown claimants and a defendant with an unknown address, this matter was a case ripe for service by publication." It cites no case law for the proposition that because one defendant meets the criteria for service publication, all defendants including those located in the county with a known address may be served by publication, so we must assume Etchepare's argument rests on the plain language of the rule itself. "We interpret rules in the same manner as statutes, looking first to the plain language." *RME Petroleum Co. v. Wyo. Dep't of Revenue*, 2007 WY 16, ¶ 43, 150 P.3d 673, 688 (Wyo. 2007).

[¶41] Under the plain language of Rule 4(l)(1)(A) and (B), an affidavit must establish that "service of a summons cannot be made within this state, on **the defendant** to be served by publication" and must "stat[e] **the defendant's** address, if known." (Emphasis added.) This language unambiguously refers to each defendant to be served by publication. The affidavit does not list the address of each defendant, nor does it state that service of summons cannot be made on the defendants to be served by publication. Rather, it identifies only one out-of-state defendant that could not be served by summons and it cites

14

unknown "putative" defendants. Etchepare's proof of service by certified mail lists at least ten of the defendants with known addresses in Cheyenne, Wyoming. Each could have been personally served with a proper summons.[7]

[¶42] In *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Walker v. City of Hutchinson, Kan.*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), the United States Supreme Court determined that due process requires notice and opportunity for hearing appropriate to the nature of the case and that process which is a mere gesture does not satisfy the requirements of due process. Although *Mullane* approved publication notice to those whose addresses were unknown, the Court stated that where an address is "at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Mullane*, 399 U.S. at 318, 70 S.Ct. at 659. *See also Indian Hills Holdings, LLC v. Frye*, 337 F.R.D. 293, 299 (S.D. Cal. 2020) ("Under California law, '[c]onsistent with the notions of fair play and due process, substituted service by publication is "a last resort" when "reasonable diligence to locate a person in order to give him notice before resorting to the fictional notice afforded by publication" has been exercised.'" "Personal service remains the method of choice under the statutes and the constitution . . . ." (citations omitted)); *O'Donnell v. Kaye*, 2015 WI App 7, ¶ 11, 859 N.W.2d 441, 445 ("[E]very measure which the legislature has adopted for the purpose of securing . . . that the [defendant] may receive actual notice, should be particularly carried into effect." (citation omitted)); *Johnson v. Cintas Corp. No. 2*, 2012 WI 31, ¶ 43, 811 N.W.2d 756, 768 ("[A]ctual notice alone is not enough to confer jurisdiction upon the court. Service must be made in accordance with the manner prescribed by statute." (citations omitted)); 2A Stephen A. Hess, *Colo. Prac., Methods Of Practice* § 75:11 n.2 (7th ed. 2022 update) ("In cases affecting specific property or status or in other proceedings *in rem*, C.R.C.P. 4(g) specifically authorizes service by publication only upon those defendants who cannot be served personally.").[8]

[¶43] Etchepare's interpretation of Rule 4 would allow service by publication on all defendants **in every case** where a plaintiff cannot find one of any number of defendants or

---

[7] "Prejudice [to the plaintiff] does not factor into our analysis because we have long required strict compliance with rules governing service by publication." *Tarter v. Tarter*, 2020 WY 80, ¶ 13, 466 P.3d 829, 832 (Wyo. 2020) (citing *Goss*, 780 P.2d at 312 (The requirements of W.R.C.P. 4 concerning service by publication "are minimal and demand strict compliance.")).

[8]            Personal service, where possible, should be employed. It is considered a more desirable method of giving notice than is any form of substituted or constructive service, and it is required that an affidavit be filed if other than personal service is desired setting forth the reasons why personal service cannot be obtained. If such an affidavit is filed as to a person who is present in the jurisdiction, and could be personally served without difficulty, then there is a possibility of subsequent attack on any judgment rendered on grounds of extrinsic fraud.

1 Marlin M Volz, Jr., *Ia. Prac., Methods of Practice* § 3:5 (1917) (citing *Main v. Kick*, 180 Iowa 50, 161 N.W. 711 (1917)).

avers there may be unknown claimants. Such an interpretation would eviscerate the due process protections contained with Rule 4. "[W]e will not interpret a statute in a way that renders any portion meaningless or in a manner producing absurd results." *Solvay Chemicals, Inc. v. Wyo. Dep't of Revenue*, 2022 WY 124, ¶ 17, 517 P.3d 1146, 1152 (Wyo. 2022) (quoting *Delcon Partners LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 11, 450 P.3d 682, 686 (Wyo. 2019)); *see also Adekale v. State*, 2015 WY 30, ¶ 13, 344 P.3d 761, 765–66 (Wyo. 2015) ("This Court will not interpret a statute in . . . a manner producing absurd results." (citing *Stutzman v. Off. of Wyo. State Eng'r*, 2006 WY 30, ¶ 16, 130 P.3d 470, 475 (Wyo. 2006))); *State, Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 23, 177 P.3d 793, 799 (Wyo. 2008) ("We construe a statutory provision to harmonize it with other provisions relating to the same subject matter."); *Wilson Advisory Comm. v. Bd. of Cnty. Comm'rs*, 2012 WY 163, ¶ 31, 292 P.3d 855, 863 (Wyo. 2012).

[¶44]  Service by publication is not a shortcut on the way to the courthouse. "The attorney for a litigant is responsible for strict compliance with the rules and statutes authorizing substituted service." *Gookin*, 826 P.2d at 235 (citing *Nat'l Supply Co. v. Chittim*, 387 P.2d 1010, 1012 (Wyo. 1964)). "The court's inquiry must be as to whether the requisites of the controlling statute have been complied with and such compliance appears on record." *Id.* (citing *Napoleon B. Broward Drainage Dist. v. Certain Lands Upon Which Taxes Were Due*, 33 So. 2d 716, 718 (Fla. 1948)). Etchepare's affidavit for service by publication was deficient on its face. The record indisputably reflects the Hopeful entities' usual place of business was Laramie County and that Ted Simola resided in Laramie County with a known address. The Hopeful entities and Ted Simola were not subject to substitute service. Personal service with a summons and complaint were necessary to provide the district court with personal jurisdiction. Unless personal jurisdiction is waived, "[a] judgment entered without proper service of the summons is void and subject to attack directly or collaterally." *Hoke*, ¶ 7, 131 P.3d at 374.

### 3.  Summons in Service by Publication

[¶45]  The Hopeful entities claim that the district court erred when it determined that a request for a summons is not required when service of process is proper under Rule 4(k) and (l). In its written order, the district court held the service by publication was properly effectuated and added, "The Court additionally notes that there is no requirement to request a summons in order to do service by publication as alleged by Defendants Hopeful Partnerships." As we have not previously addressed this issue, we consider the reasoning of the decisions of other courts which have considered this question.

[¶46]  In *McCoy v. McCoy*, the court reviewed the North Carolina rule regarding service by publication and its requirement of due diligence. It reasoned:

> Adoption of our new Rules of Civil Procedure has made
> no change in our practice in this regard. Rule 4(j)(9)c, which

sets forth the procedure for service of process by publication, reads in pertinent part as follows:

> c. Service by publication.—A party subject to service of process under this subsection (9) may be served by publication whenever the party's address, whereabouts, dwelling house or usual place of abode is unknown and cannot with due diligence be ascertained, **Or** there has been a diligent but unsuccessful attempt to serve the party under either paragraph a or under paragraph b or under paragraphs a and b of this subsection (9).

This subparagraph appears in Rule 4(j), which deals with the manner of service of process to exercise personal jurisdiction. It is noteworthy that every subparagraph of Rule 4(j) speaks of or clearly contemplates "delivering a copy of the summons and of the complaint," with the sole exception of subparagraph c of subsection (9) quoted above. The omission of any reference to a summons in subparagraph 9(c) is, we think, significant. Had the Legislature intended to make a change in our practice so as to require the "useless formality" of issuance of a summons and return thereon that defendant was not to be found in the county as a prerequisite to validity of a service by publication, surely some reference to a summons would have been made in subparagraph 9(c) as it was in all other subparagraphs of Rule 4(j). It should also be noted that subparagraph 9(c) is itself expressed in the disjunctive; it does not require a showing **Both** that the whereabouts of the party to be served cannot with due diligence be ascertained **And** that there has been a diligent but unsuccessful attempt to serve him under one of the preceding subparagraphs of subsection (9) under which a summons would necessarily have been issued.

We see no reason why, now more than formerly, due diligence should require performance of a useless formality. Nothing in the Rules of Civil Procedure indicates that the Legislature intended that it should. Logical interpretation of the language employed suggests strongly to the contrary.

*McCoy v. McCoy*, 223 S.E.2d 513, 515–16 (N.C. Ct. App. 1976) (emphasis added). This ruling was recognized in *Wayne Cnty. ex rel. Williams v. Whitley*, where the court stated:

> [I]f the circumstances are such to justify service of process by publication (in other words, even with due diligence the defendant cannot be personally served) and the plaintiff's cause of action has not yet abated, then as this Court indicated in *McCoy*, we see no reason to require the "useless formality" of having an alias or pluries summons issued.

*Whitley*, 323 S.E.2d at 462 (citing *McCoy*, 223 S.E.2d at 515).

[¶47]  Similarly, in *Shaffer v. Shaffer*, the court reasoned:

> The issuance of the summons is a clerical act and, of course, takes place before the service of the summons upon the defendant.  It is this act of the Clerk in conjunction with the filing of the petition which completes the commencement of the action as ordinarily understood under G.C. § 11279.  It has been stated that, "Where actions are commenced by issuance of process, an action is commenced as of the time when the writ or summons is properly issued, *with a bona fide intention that it be served*, although service is not actually had." (Emphasis ours.)  1 C.J.S. Actions § 129, p. 1397.

> It would seem appropriate that the issuance of a summons should only answer the purposes of the statute, if done with the intention that it be served.  So that, in a situation such as is found in the instant case, the issuance of a summons would have been a vain and futile act for the obvious reason that the plaintiff knew at the time of the filing of her petition that the defendant could not be served with summons.  If the statute be given literal interpretation, then, notwithstanding the knowledge of the plaintiff that a summons could not be served, she would be required to have it issued because the letter of the statute so required.  Having done so, this act, though obviously not made in good faith, would constitute the commencement of her action.  But the filing of her affidavit for service by publication in due form, without first the issuance of a summons would not constitute the commencement of her action.  Such a holding seems contrary to the spirit and manifest purposes of G.C. § 11279.

*Shaffer v. Shaffer*, 42 N.E.2d 176, 179 (Ohio Ct. App. 1941); *see also Martin v. Pond*, 30 F. 15, 18 (C.C.D. Minn. 1887) ("it may be conceded that notice to the defendant is essential to divest him of his rights and interests.  But the publication is the notice,—it is the

18

equivalent to the personal service of a summons; and it is not pretended that there was any defect in the publication in the case at bar. The defect alleged is in the affidavit for publication.").

[¶48] W.R.C.P. 4(m)(4) sets forth the specific information which must be included in the published notice:

> (m) *Publication of Notice.*
>
> .   .   .
>
> (4) publication must contain
>
> (A) a summary statement of the object and prayer of the complaint,
>
> (B) mention the court wherein it is filed,
>
> (C) notify the person or persons to be served when they are required to answer, and
>
> (D) notify the person or persons to be served that judgment by default may be rendered against them if they fail to appear.

W.R.C.P. 4(m)(4).[9] In comparison, a summons under Rule 4(a) requires:

---

[9] The published Notice of Publication of Summons and Notice of Hearing stated:
> TO: Each of the Above-Named Defendants and Claimants
> You are notified that on March 26, 2021, Plaintiffs Etchepare LLC (hereinafter referred to as Plaintiff) filed its Petition for Quiet Title and Declaratory Judgment (hereinafter the Petition) in the District Court of the First Judicial District, Laramie County, Wyoming, being Civil Action No. 194574. The object and prayer of the Petition in this matter is for the recovery of interest in, certain real property (mineral interests) situate in Laramie County, Wyoming, more particularly as either a 3.125% or 12.5% mineral interest in and under the following described lands [listing legal descriptions].
> You are hereby summoned to serve upon the Plaintiff an Answer to the Petition within thirty (30) days after the last day of publication of this notice. Should you fail to file an Answer, the allegations of such Petition shall be taken as true, and the relief sought, [describing relief sought] will be granted and judgment entered against you. . . .
> A current address for Holmes Jones Petroleum is unknown at this time. Addresses for [named defendants] are known at this time and Notice will

19

(a) *Contents.*—A summons must:

(1) name the court and the parties;

(2) be directed to the defendant;

(3) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;

(4) state the time within which the defendant must appear and defend;

(5) notify the defendant that a failure to appear and defend may result in a default judgment against the defendant for the relief demanded in the complaint;

(6) be signed by the clerk; and

(7) bear the court's seal.

W.R.C.P. 4(a).

[¶49] The information required in a summons is generally the same as that provided in a notice by publication other than a summons must be signed by the clerk and bear the court's seal. There is no mention of a summons in Rule 4(m). Given that a **proper** defendant for service by publication could not be personally served a summons, we agree with the reasoning of the cases cited above. Requiring a summons when service is accomplished by publication, absent a statute or rule to the contrary, would only demand the exercise of a futile act. Such acts are generally not required. *See Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 2021 WY 17, ¶ 61, 479 P.3d 1222, 1240 (Wyo. 2021) ("the proponent is not required to engage in futile acts to procure a witness"); *Farmer v. State*, 2005 WY 162, ¶ 14, 124 P.3d 699, 705 (Wyo. 2005) ("The prosecution is not required to engage in futile acts to procure a witness."); *Weston Cnty. Hosp. Joint Powers Bd. v. Westates Constr. Co.*, 841 P.2d 841, 849 (Wyo. 1992) ("the law does not require [litigant], or any other claimant similarly situated, to engage in the futile act of providing further documentation under such circumstances. A contrary result would indeed elevate form over substance."). The district court correctly held that a request for a summons on a defendant who cannot be found or is not known, under Rule 4(k), is not required by Rule 4(m).

---

be mailed via certified mail and marked as Restricted Delivery from the District Court Clerk.

[¶50]   We now turn to whether, and to what extent, the Hopeful entities waived their objection to personal jurisdiction.

### III.   Did Hopeful partnership, Hopeful Ltd., and Ted Simola waive personal service?

### A.   Waiver

[¶51]   Etchepare and Ned Murray Co. maintain that, even if the Hopeful entities were not properly served, they waived any defect in service when they did not raise a jurisdictional issue in their Motion to Amend.

[¶52]   "[W]here a defendant appears voluntarily, without questioning the court's personal jurisdiction, that appearance is the equivalent of proper service of process." *Knight ex rel. Knight v. Est. of McCoy*, 2015 WY 9, ¶ 27, 341 P.3d 412, 419 (Wyo. 2015) (quoting *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 54, 275 P.3d 438, 456 (Wyo. 2012)). An objection to personal jurisdiction must be made at the earliest opportunity, otherwise it is waived. *Operation Save Am.*, ¶ 54, 275 P.3d at 455–56 (quoting *JAG*, ¶ 13, 56 P.3d at 1019); *see also Walton*, ¶ 10, 50 P.3d at 697 (personal jurisdiction deemed waived if not questioned at the earliest opportunity); *Matter of Adoption of MSVW*, 965 P.2d 1158, 1162 (Wyo. 1998). "[T]he general rule [is] that it is necessary to question [the] jurisdiction of the court over the person at the earliest opportunity, failing in which the defense will be considered waived." *Pease*, 522 P.2d at 1002. "When a defendant voluntarily appears without questioning the court's personal jurisdiction over him, his appearance is the equivalent of proper service of process." *MSVW*, 965 P.2d at 1162 (citing *Pease*, 522 P.2d at 1002).

[¶53]   Mr. Simola, although not properly served, filed an answer to the complaint in his individual capacity on June 14, 2021.  The answer did not raise any jurisdictional claims. Ted Simola waived his personal jurisdictional defenses.[10]

[¶54]   On the other hand, the Hopeful entities did not file any pleading or motion with the district court until January 5, 2022, when the Hopeful entities filed their Motion to Amend. Their motion also failed to raise any jurisdictional defense and affirmatively requested action by the district court.  At that point, the Hopeful entities also waived their personal jurisdictional defenses; a waiver which cannot be withdrawn. *Quenzer v. Quenzer*, 653 P.2d 295, 305 (Wyo. 1982) ("By invoking the power of the district court to grant affirmative relief, the appellant waived his special appearance and made a general appearance."  Father "cannot withdraw his earlier appearance and escape the jurisdiction of the court." (citations omitted)).

---

[10] Ms. Kulas is not a named as an appellant in this appeal.  To the extent she will remain an individual party in this case, she also waived her jurisdictional defense on that date.

## B.     Effect of Waiver

[¶55]   Although the Hopeful entities waived their jurisdictional defenses on January 5, 2022, we must determine the scope and effect of that waiver.  As discussed above, the law is clear that personal jurisdiction may be waived.  It is equally clear, however, that "for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void."  *Pease*, 522 P.2d at 1000 (quoting *Lincoln Tavern, Inc. v. Snader*, 133 N.E.2d 606, 610 (Ohio 1956)).  The question becomes whether the January 2022 waiver retroactively granted the district court jurisdiction which would validate the district court's previous orders and judgments affecting the Hopeful entities.[11]

[¶56]  In *Pease*, we held the entry of a default judgment by the district court was void because it was entered before the court had personal jurisdiction over the defendant.  We said, "Judgments without personal service of process within the state issuing it, or its equivalent, or upon a service of process in a manner not authorized by law, are void judgments, and may be so treated in any proceeding, direct or collateral."  *Pease*, 522 P.2d at 1000 (citation omitted).  "[A] party who submits to the court's jurisdiction does so only prospectively and the appearance does not retroactively validate orders entered prior to that date."  *In re Marriage of Verdung*, 535 N.E.2d 818, 820 (Ill. 1989) (citations omitted).  "'[W]here a judgment is void when entered, it remains void,' despite subsequent submission by a party to the circuit court's jurisdiction."  *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 36, 6 N.E.3d 162, 170 (quoting *J.C. Penney Co. v. West*, 449 N.E.2d 188, 190 (Ill. App. Ct. 1983)).  A waiver does not "serve to validate retroactively the void orders entered prior to defendant's submission to the court's jurisdiction."  *BAC Home Loans*, ¶ 44, 6 N.E.3d at 171.

[¶57]  We recognize the default judgment in this case occurred shortly after the Hopeful entities filed their motion to amend the answer.  We discuss the waiver as applied to the default judgment below.  However, to highlight the scope of the problems created by the insufficient service of process in this case, we note the district court had entered, among other orders, an Order to Bifurcate the proceedings, setting aside the Hopeful entities internal disagreements about the distribution of the Hopeful entities' mineral interests.  Later, it issued a Partial Decree for Quiet Title and Declaratory Judgment determining the Hopeful entities' mineral interest in total (subject to the Bifurcation Order) and determining the mineral and leasehold interests of the other litigants.  Because the district court did not have personal jurisdiction over the Hopeful entities (and possibly others included in these orders), these orders are void and subject to collateral attack.  Given that service by publication, without summons, was utilized for **all** the defendants, the entire proceeding is now at risk.

---

[11] Ms. Kulas and Mr. Simola waived their jurisdictional defense prior to the substantive orders of the district court.

22

***IV.  Did the district court err in entering a default judgment and denying the motion to set aside default?***

**A.  Entry of Default**

[¶58] As determined above, the Hopeful entities waived prospective objections to personal jurisdiction through their Motion to Amend in January 2022.  On that date, the Hopeful entities had submitted to the jurisdiction of the district court.  In an oral ruling at the hearing, the district court held the Hopeful entities' motion must be denied because they had not filed an answer to the complaint, and therefore could not amend a nonexistent answer.  Just prior to the March 23, 2022 hearing, Etchepare and Ned Murray Co. filed for a default under Rule 55(b).  The entry of default judgment was entered the same day.  It stated:

> [The Hopeful entities] are in default for failure to plead or otherwise defend as required by law . . . . Said Petition for Quiet Title and Declaratory Judgment was filed with the First Judicial District Court of Laramie County on March 26, 2021, service by publication was completed on April 21, 2021, and any and all answers were due from Defendants on May 21, 2021.

The problem here, of course, is that the Hopeful entities were not properly served and were not required to answer on May 21, 2021.  Their waiver of personal jurisdiction did not occur until January 2022.

### 1. Denial of Motion to Set Aside Default

[¶59]  Two days after the court entered the default judgment, the Hopeful entities filed an objection to the entry of default under Rule 55(c) claiming the service of process by publication on these defendants was insufficient to confer subject matter or personal jurisdiction on the district court.  As alternative relief, they moved for dismissal of the action based on lack of jurisdiction.  At the hearing on the motion to set aside default, the district court dismissed the motion because the Hopeful entities had not shown good cause under Rule 55(c) and had not shown improper service by clear and convincing evidence.

[¶60]  The entry of a default judgment is controlled by Rule 55 which states in relevant part:

> (a) *Entering a Default.*—When a party against whom a judgment for affirmative relief is sought has **failed to plead or**

**otherwise defend**, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) *Entering a Default Judgment.—*

.  .  .

(2) **By the Court.**—In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.

.  .  .

(c) *Setting Aside a Default or a Default Judgment.*—The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

W.R.C.P. 55(a)–(c) (emphasis added). "[G]ood cause for setting aside an entry of default, pursuant to [W.R.C.P.] 55(c), is to be found in the justifications for relief from a final judgment articulated in [W.R.C.P] 60(b)." *In re HLL*, 2016 WY 43, ¶¶ 27–38, 372 P.3d 185, 191–93 (Wyo. 2016) (quoting *Fluor Daniel (NPOSR), Inc. v. Seward*, 956 P.2d 1131, 1134 (Wyo. 1998)); *see also In re ARW*, 2015 WY 25, ¶ 18, 343 P.3d 407, 412 (Wyo. 2015) ("We have previously held that the factors described in Rule 60(b) are relevant to our determination of whether the defendant has shown 'good cause.'" (citation omitted)).

[¶61]   Rule 60(b) provides:

(b) *Grounds for Relief from a Final Judgment, Order, or Proceeding.*—On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

24

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

W.R.C.P. 60(b).

We review the district court's denial of [a] W.R.C.P. 60(b) motion for abuse of discretion. An abuse of discretion occurs where the district court could not reasonably have concluded as it did. [I]t is the movant's burden to bring his cause within the claimed grounds of relief and to substantiate these claims with adequate proof. An order denying relief will be reversed only if the trial court was clearly wrong.

*Olson v. Schriner*, 2020 WY 36, ¶ 15, 459 P.3d 453, 458–59 (Wyo. 2020) (internal citations and quotation marks omitted) (quoting *SWC Prod., Inc. v. Wold Energy Partners, LLC*, 2019 WY 95, ¶ 5, 448 P.3d 856, 858 (Wyo. 2019)).

[¶62] "A default judgment is not a trial on the merits." *Loeffel v. Dash*, 2020 WY 96, ¶¶ 24–29, 468 P.3d 676, 682–84 (Wyo. 2020); *Rosty v. Skaj*, 2012 WY 28, ¶ 29, 272 P.3d 947, 957 (Wyo. 2012) ("[T]his court has long recognized that 'default judgments are not favored in the law' and 'it is preferable that cases be tried on their merits.'" (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 997 (Wyo. 1993))). "Default judgments are punitive sanctions against an unresponsive party that serve as a protection to a diligent party." *Loeffel*, ¶¶ 24–29, 468 P.3d at 682–84 (citing *Multiple Resort Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 2002 WY 67, ¶ 22, 45 P.3d 647, 654–55 (Wyo. 2002)).

[¶63] When determining a motion set aside a default judgment, "[t]he court first must consider whether the filed motion articulates a reason for relief under [W.R.C.P.] 60, and that is a question of law to be reviewed for correctness." *Multiple Resort Ownership*, ¶ 11, 45 P.3d at 651–52 (quoting *Fluor Daniel*, 956 P.2d at 1134). Here, the district court concluded that the Hopeful entities had not articulated a reason for relief. As discussed, the district court erred in concluding the service by publication was effective as to these defendants.

[¶64] W.R.C.P. 60(b)(6) provides a judgment should be set aside when the defendant presents "any other reason that justifies relief." "[T]he express purpose of this rule is to

provide the courts with the means of relieving a party from the oppression of a final judgment . . . on a proper showing where such judgments are unfairly or mistakenly entered." *MSC v. MCG*, 2019 WY 59, ¶ 9, 442 P.3d 662, 665 (Wyo. 2019) (quoting *Kennedy v. Kennedy*, 483 P.2d 516, 518 (Wyo. 1971)). Here, the Hopeful entities correctly argued that the service by publication did not achieve personal jurisdiction over them.

[¶65] At the time the default judgment was entered, the Hopeful entities had voluntarily submitted themselves to the jurisdiction of the district court and had not raised the jurisdictional defense. The jurisdictional argument was first made in their motion to set aside the default judgment. "When an appropriate reason is set forth, the exercise of discretion in granting or denying relief depends upon the facts of the case." *Multiple Resort Ownership*, ¶¶ 10–11, 45 P.3d at 651–52 (quoting *Fluor Daniel*, 956 P.2d at 1134).

[¶66] Here, in their first appearance—their motion to amend the answer—the Hopeful entities attempted to answer or otherwise defend the case. There was no basis for a finding that they had not diligently attempted to do so once personal jurisdiction was established. We conclude the district court erroneously found that the Hopeful entities answer was due on May 21, 2021, and it abused its discretion in failing to grant the Hopeful entities request to set aside the default judgment. There was no reason for these defendants to be subject to "punitive sanctions against an unresponsive party" or that default judgment would "serve as a protection to a diligent party." The plaintiffs chose an inappropriate and invalid shortcut to initiate service on all the defendants and should not be rewarded for those efforts. We find the district court abused its discretion and reverse the district court's denial of the motion to set aside the default judgment.

## *CONCLUSION*

[¶67] The district court's subject matter jurisdiction was established when Etchepare filed its quiet title and declaratory judgment action. However, service by publication on all defendants did not establish personal jurisdiction over the Hopeful entities. The district court erred in entering a default judgment against these defendants and abused its discretion when it failed to set aside that judgment. We affirm the district court's determination that a summons is not required as to those defendants who are **properly** subject to service by publication. We reverse on the ability to serve defendants with known addresses by publication, and the district court's denial of the motion to set aside the default judgment. This case is remanded for further proceedings in accordance with this opinion.

26